Edgar R. Cataxinos (USB #7162)
ercataxinos@traskbritt.com
H. Dickson Burton (USB #4004)
hdburton@traskbritt.com
Krista Weber Powell (USB #8019)
kwpowell@traskbritt.com
Brandon S. Mecham (USB #13298)
bsmecham@traskbritt.com
TRASKBRITT, PC
230 South 500 East, Suite 300
Salt Lake City, Utah  84102
Telephone: (801) 532-1922
Fax: (801) 531-9168

*Attorneys for Defendant NaviNet, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **PPS DATA, LLC**., a Nevada limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> **NAVINET, INC.**, a Delaware corporation, <br><br> Defendant, | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FULL PRODUCTION OF DOCUMENTS** <br><br> Case No. 2:12-cv-00439-RJS-EJF <br><br> Judge Robert J. Shelby <br><br> Magistrate Judge Evelyn J. Furse |

Defendant NaviNet, Inc. ("NaviNet"), by and through counsel, respectfully files this Memorandum in Opposition to Plaintiff's Motion to Compel Full Production of Documents.  As set forth more fully below, Plaintiff's Motion is both premature and unnecessary, and was filed without completing a meet and confer requirement.  Specifically, Plaintiff PPS Data's requests

are overbroad and, with respect to financial and sales data, premature.  It should therefore be denied.

## INTRODUCTION

A.  Background

Addressing the discovery issues presently before the Court will be facilitated by a brief explanation of the substantive issues of the case.  PPS Data, LLC ("PPS Data") brought this case against NaviNet for infringement of United States Patents 6,341,265 ("the '265 Patent") and 7,194,416 ("the '416 Patent").  The '265 and '416 Patents (hereinafter, collectively, the "patents-in-suit") relate to computerized health insurance claim services.  *See* the Declaration of Edgar R. Cataxinos (hereinafter "Cataxinos Decl."), ¶ 2.  For example, the preamble to claim 1 of the '265 Patent recites "a method of interactively preparing an insurance claim"; and the preamble to claim 1 of the '416 Patent recites "[a] computer program product for implementing a method of interactively preparing an insurance claim."  *See* U.S. Patent 6,341,265, claim 1, attached to Cataxinos Decl., Ex. 1; U.S. Patent 7,194,416, claim 1, attached to Cataxinos Decl, Ex. 2.

To infringe claim 1 of the '265 Patent, NaviNet's accused products would have to perform *at least* the following steps: (1) a health care provider enters a diagnosis code and a treatment code in an electronic claim form displayed on a client computer; (2) a remote server computer determines—and then indicates to the health care provider—that the diagnosis code and the treatment code do not correspond to health care services that are approved for payment; (3) the remote server computer transmits to the client computer a "*suggested revised treatment code* ... such that the treatment associated with the revised treatment code can be included in the health care services when the health care services are performed."  *See* U.S. Patent 6,341,265,

*supra*, claim 1.  These steps are further required by essentially each claim of the '265 Patent.  *Id.*, claims 1–27.  Additionally, the claims of the '416 Patent require "program code means" for performing the same general steps.  *See* U.S. Patent 7,194,416, *supra*, claims 1–12.

NaviNet's products accused of infringing these claims, as outlined in the Complaint filed on May 4, 2012, are "NaviNet Insurer Connect" and "NaviNet PM."  (*See* Pl.'s Compl., ¶ 6 [Dkt. No. 2].)  NaviNet Insurer Connect is a hosted web portal providing access to multiple health plans, in addition to secure, up-to-date patient information such as eligibility, benefits and claim status from multiple insurers.  *See* Cataxinos Decl. ¶ 2.  NaviNet PM ("PM" stands for "Practice Management") is a hosted web portal that offers access to administrative, financial and clinical information from health plans, patients and providers, and allows practices to manage patient accounts, scheduling, billing, eligibility and benefits.  *Id.* ¶ 3.  Because neither of these products transmits a "suggested revised treatment code" after "indicating to the health care provider that the diagnosis code and the treatment code do not correspond to health care services that are approved for payment," neither of these products even come close to infringing the patents-in-suit.  *See id.* ¶ 4.

The parties' claim construction briefing has been completed, and a claim construction (or "Markman") hearing is currently scheduled for September 4, 2013.  (*See* Minute Entry [Dkt. No. 60].)  Not surprisingly, the claim construction briefing makes it clear that the infringement analysis will likely turn on the definition of the claim terms "suggested revised treatment code" and "revised proposed insurance claim."  (*Compare* Pl.'s Opening Claim Construction Br. at 22–25 [Dkt. No. 41], *with* Def.'s Opening Claim Construction Br. at 16–18, 20–22 [Dkt. No. 42].) As neither of the accused NaviNet products encompasses a "suggested revised treatment code"

or a "revised proposed insurance claim," at least according to the plain meaning of these terms, PPS Data asks the Court to adopt definitions for these terms clearly beyond their scope and contradictory to the other elements of the patent claims.   (*See* Def.'s Opening Claim Construction Br. at 16–18, 20–22 [Dkt. No. 42].)   NaviNet asserts that resolution of these claim construction issues will likely lead to resolution of this entire case.

B. PPS Data's Discovery

In spite of PPS Data's overly broad and burdensome discovery requests,[1] NaviNet has expended substantial effort and expense to respond to them.   At the outset of discovery, Edgar Cataxinos, counsel for NaviNet, indicated to James Burton, counsel for PPS Data, that NaviNet would make a rolling production of documents, beginning with those most pertinent.   Counsel specifically discussed that which PPS Data needed first.   As a result of those discussions, NaviNet agreed to produce documents relating to the issue of infringement, such as operation and training manuals, which NaviNet has done.   PPS Data requested a demonstration of the accused products; NaviNet provided a demonstration.   NaviNet also complied with PPS Data's request to provide the deposition of Sidharth Jain, Manager of Strategic Partnerships at NaviNet. Such production and discovery was clearly instructive for PPS Data, as it subsequently removed NaviNet PM from its list of infringing products in its Amended Complaint filed April 6, 2013. (*See* Pl.'s First Am. Compl.,¶ 6 [Dkt. No. 59].)   Additionally, NaviNet has produced all of its

---

[1] As an example of PPS Data's overly broad and burdensome discovery requests, in PPS Data's First Set of Requests for Production of Documents and Things, PPS Data propounded the following, vastly overbroad definition of the term "product(s)":

> Product(s) shall mean and refer to NaviNet's Navinet Insurer Connect and NaviNet PM systems or any similar products, system, device, process, method, or other instrumentality designed, manufactured, assembled, imported, promoted, advertised, distributed, offered for sale, and/or sold by or on behalf of You.

(Pl.'s First Set of Requests for Production of Docs. at 2, attached at Ex. A to the instant motion [Dkt. No. 67].)

responsive marketing and advertising materials, customer lists, licensing information, prior art and freedom to operate searches and opinions, its objections withstanding.  *See* Cataxinos Decl. ¶ 7.

Importantly, PPS Data's motion is premature, as PPS Data has failed to make "a reasonable effort to reach agreement … on the matters set forth in the motion."  DUCivR 37-1(a); FED. R. CIV. P. 37(a).  This pending motion appears to be simply another attempt by PPS Data to unnecessarily drive up the cost of litigation for NaviNet.  NaviNet was attempting to work with PPS Data to address an entire host of various discovery issues, including substantial problems with PPS Data's own document production.  Then, on April 4, 2013, without completing a legitimate meet and confer with NaviNet, and without responding to a single point of concern raised by NaviNet regarding issues pertaining to PPS Data's document production, PPS Data filed the this Motion to Compel [Dkt. No. 76].

As of the filing of the this Motion on April 4, 2013, NaviNet had produced documents responsive to the following categories of document requests: information regarding the functionality of the accused NaviNet products, including operating manuals, training manuals, user guides, and demo scripts; customer lists and customer information; marketing and advertising materials; prior art; and freedom to operate searches and freedom to operate opinions. Cataxinos Decl. ¶ 7.  Additionally, as of April 23, 2013, NaviNet further supplemented its document production to include the remainder of all non-privileged documents in each of these categories of which it is aware, its objections withstanding.  *Id.*  Furthermore, as of the filing of this Motion, NaviNet had performed a live demonstration of the accused products, and PPS Data

had taken the deposition of NaviNet's Manager of Strategic Partnerships.  (*See* Pl.'s Mot. to

Compel at Ex. Q [Dkt. No. 67].)

Thus, the only issues which should be before the Court relating to this Motion are the

extreme and unreasonable overbreadth of PPS Data's requests, and the timing of the production

of NaviNet's financial and sales information.[2]

## FACTUAL BACKGROUND

1.      On August 2, 2012, this Court entered the parties' Joint Scheduling order, which

set the cutoff for fact discovery on May 24, 2013.  (Order [Dkt. No. 24].)

2.      On July 25, 2012, PPS Data served on NaviNet its First Set of Requests for

Production of Documents and Things.  (*See* Pl.'s Mot. to Compel at Ex. A [Dkt. No. 76].)   As

part of those Requests, PPS Data propounded the following, definition of the term "product(s)":

> "Product(s) shall mean and refer to NaviNet's Navinet Insurer Connect and
> NaviNet PM systems or any similar products, system, device, process, method, or
> other instrumentality designed, manufactured, assembled, imported, promoted,
> advertised, distributed, offered for sale, and/or sold by or on behalf of You.

Examples of the actual requests for production, which purportedly depend on the above

definition of "Products" include the following:

> **Request No. 17:** All Documents and things relating to, constituting, or
> memorializing any communication between You and any former, current, and/or
> prospective Customers related in any way to Your Products.

> **Request No. 28:** All Documents and things relating to praise, criticism, or
> commentary about Your Products, including, without limitation, articles, press
> releases, advertisement, correspondence, statements, or other testimonials by
> Your representatives, distributors, customers, potential customers, or competitors.

---

[2] Because claim construction is likely to be dispositive to this entire case, NaviNet has proposed a stipulation to PPS
Data that discovery into financial and sales data be delayed until after the Court enters a claim construction order.
As of the date of this filing, PPS Data has not responded to NaviNet's proposal.  If necessary, NaviNet plans to file a
Motion to this effect.

**Request No. 41:** All Documents and things relating to any communication between You and any other Person pertaining to Your Products, including internal and external communications.

3.       On August 23, 2012, NaviNet's counsel, Edgar Cataxinos, sent an email to PPS Data objecting to the over-breadth of PPS Data's document requests, and further requesting that PPS Data narrow its document requests to specify the NaviNet products it alleges infringing the patents-in-suit.  Specifically, Mr. Cataxinos stated his objections to such a "far too broad" scope of discovery, further stating that such a definition "would encompass systems that are not recited elements of the claims or are entirely unrelated to the subject matter of the PPS patents."  *See* email exchange between Mr. Cataxinos and Mr. Burton, August 23 and 24, 2012, attached to Cataxinos Decl., Ex. 3.  In spite of NaviNet's request that PPS Data narrow the definition of the term "Product(s)," PPS Data refused.  *See id.*

4.       On August 27, 2012, NaviNet served on PPS Data its Response to Plaintiff's First Set of Requests for Production of Documents and Things.  (*See* Pl.'s Mot. to Compel at Ex. B [Dkt. No. 67].)

5.       On August 29, 2012, NaviNet served on PPS Data its first of a series of document productions, containing NAVI0001–1167, including the file histories for the patents-in-suit and the file history for U.S. Patent 7,325,076, owned by NaviNet.  *See* Cataxinos Decl. ¶ 8.

6.       On September 20, 2012, PPS Data sent an email to NaviNet complaining about the lack of certain categories of documents in NaviNet's first document production of August 29, 2012.  Each of these categories is quoted below, along with an explanation of the current status of NaviNet's production for each category:

a.   "financial information" (NaviNet has withheld such documents on the bases of its objections that the related Requests are, *inter alia*, overbroad and premature);

b.   "marketing" (responsive documents produced by NaviNet on October 31, 2012);

c.   "advertising" (responsive documents produced by NaviNet on October 31, 2012);

d.   "R&D" (NaviNet has no such responsive documents);

e.   "manufacturing" (NaviNet has no such responsive documents);

f.   "prior art" (responsive document produced by NaviNet on October 31, 2012);

g.   "customer information" (responsive documents produced by NaviNet on October 2, 2012);

h.   "operating manuals" (responsive documents produced by NaviNet on October 2, 2012; December 17, 2012; January 28, 2013; February 8, 2013; and April 23, 2013);

i.   "information regarding the functionality of the accused Navinet products" (responsive documents produced by NaviNet on October 2, 2012; December 17, 2012; January 28, 2013; February 8, 2013; and April 23, 2013);

j.   "licensing information" (NaviNet has no such responsive documents);

k.   "communications (extern and internal, written and electronic)" (NaviNet has withheld such documents on the bases of its objections that the related Requests are, *inter alia*, overbroad);

l.   "corporate meeting documents" (NaviNet has withheld such documents on the bases of its objections that the related Requests are, *inter alia*, overbroad);

m.   "previous lawsuits" (NaviNet has no such relevant responsive documents); and

n.   "document retention policies" (NaviNet has no such responsive documents).

(*See* Pl.'s Mot. to Compel at Ex. C [Dkt. No. 67]); Cataxinos Decl. ¶ 9.

7.    On September 26, 2012, the parties met and conferred via telephone to discuss, among other things, the deficiencies in NaviNet's document production identified in PPS Data's

email of September 20, 2012.  During this teleconference, Mr. Cataxinos informed Mr. Burton that NaviNet's document production would be coming in a "rolling production."  (*See* Pl.'s Mot. to Compel at Ex. D [Dkt. No. 67].)  Mr. Burton accepted this approach to NaviNet's production. Cataxinos Decl. ¶ 10.

8.      On October 2, 2012, NaviNet served on PPS Data its second of a series of document productions, containing NAVI1168–1832, including documents relating to NaviNet's corporate structure, customer information, manuals and demo scripts.  *See* Cataxinos Decl. ¶ 11.

9.      On October 5, 2012, NaviNet served on PPS Data its First Set of Request for Production of Document and Things, attached to Cataxinos Decl. ¶ 11, Ex. 4.

10.     On October 31, 2012, NaviNet served on PPS Data its third of a series of document productions, containing NAVI1833–3057, including adverting and marketing materials, prior art, and NaviNet security policies and procedures.  *See* Cataxinos Decl. ¶ 12.

11.     On November 5, 2012, PPS Data served on NaviNet its document production in response to NaviNet's First Set of Request for Production of Document and Things.  PPS Data's document production included 154,066 pages of documents.  *See id.*, ¶ 13.

12.     On December 7, 2012, PPS Data sent an email to NaviNet complaining about the lack of production of certain documents, specifically identifying "the absence of any guides/manuals for the accused products," further stating that "NaviNet has also failed to produce any documents responsive to most categories listed in my September 20, 2012 correspondence," and requesting a second meet and confer.  (*See* Pl.'s Mot. to Compel at Ex. H [Dkt. No. 67].)

13. On December 14, 2012, the parties, through Mr. James Burton for PPS Data and Mr. Edgar Cataxinos for NaviNet, met and conferred via telephone, wherein the parties discussed, *inter alia*, PPS Data's issues with NaviNet's document production, as well as other discovery issues. In particular, PPS Data prioritized its discovery needs from NaviNet as follows: "(1) full production of relevant manuals; (2) product demonstration; and (3) deposition of Sid (cannot remember his last name)." *See* Cataxinos Decl. ¶ 14; (Pl.'s Mot. to Compel at Ex. I [Dkt. No. 67]).

14. On December 17, 2012, NaviNet served on PPS Data its fourth of a series of document productions, containing NAVI3058–3097, including a forty-page training demo designed to show basic NaviNet functionality. *See* Cataxinos Decl. ¶ 15.

15. On January 10, 2013, NaviNet served on PPS Data supplemented Initial Disclosures responsive to personnel changes at NaviNet. *Id.* ¶ 16; (*see also* Pl.'s Mot. to Compel at Ex. L [Dkt. No. 67]).

16. On January 17, 2013, NaviNet sent an email to PPS Data outlining with specificity a number of problems and issues relating to PPS Data's document production, as well as identifying with specificity: (1) the categories of non-privileged documents that NaviNet had already produced; (2) the categories of documents in PPS Data's document requests to which NaviNet was objecting; and (3) other documents for which NaviNet was continuing to search for purposes of production. (*See* Pl.'s Mot. to Compel at Ex. N [Dkt. No. 67].) In this email, NaviNet also affirmatively stated its objections to the following categories of documents requested by PPS Data:

     a.   "Source code, any other programming code, and any flow charts representing code for at least the NaviNet Insurer Connect and NaviNet PM Systems (responsive to Request Nos. 5-7, 12, 13, 22, 22)";

     b.   "A complete listing of all NaviNet products, past and present, including all types, versions, and models of NaviNet products (responsive to Request Nos. 12, 14)";

     c.   "All records NaviNet retains of its communications with customers, past, present, and prospective (responsive to Request Nos. 12, 17, 39-41)"; and

     d.   "All email, voicemails, text messages, instant messages, and other electronic media retained by NaviNet, including backups, from the time at least the NaviNet Insurer Connect and NaviNet PM Systems began developing up the present (responsive to Request Nos. 60-62, 72-74).

*Id.*; Cataxinos Decl. ¶ 17. PPS Data again refused to narrow the scope of these document requests. *Id.*

17. On January 22, 2013, PPS Data sent an email to NaviNet acknowledging the issues NaviNet had raised in its January 17, 2013 email relating to the problems regarding PPS Data's document production, promising that "we intend to address each point of your email in full before our meeting." (*See* Pl.'s Mot. to Compel at Ex. O [Dkt. No. 67].) However, PPS Data failed to address even a single issue relating to PPS Data's problematic document production raised in the January 17, 2013 email. *See* Cataxinos Decl. ¶ 18.

18. On January 24, 2013, an interactive demonstration of NaviNet's "NaviNet Insurer Connect" and "NaviNet PM Systems" products were performed by NaviNet via a secure "Webex" network in the presence of PPS Data and its expert, Michelle Forsberg, Certified Coding Specialist – Physician-based (CCS-P), Proactive Physical Services, Inc. Cataxinos Decl. ¶ 19.

19.     On or about January 24, 2013, PPS Data sent subpoenas to at least nine (9) of NaviNet's customers, demanding production of:

     a.  Any marketing, advertising, promotional, and other document relating to NaviNet's Products.

     b.  Any documents relating to the conception, design, development, production, product assembly, bills of material, approval, testing, manufacturing, and/or the evolution of NaviNet's products.

     c.  Any operating guide, use manual, product manual, and/or operating instructions relating to NaviNet's Products.

     d.  Any documents relating to the operating characteristics and functionality of NaviNet's Products.

*See* Cataxinos Decl. ¶ 19.

20.     On January 28, 2013, NaviNet served on PPS Data its fifth of a series of document productions, containing NAVI3098–3118, including NaviNet demo scripts.  *Id.* ¶ 20.

21.     On February 8, 2013, NaviNet served on PPS Data its sixth of a series of document productions, containing NAVI3119–3132, including more NaviNet demo scripts. *Id.* ¶ 21.

22.     On February 21, 2013, PPS Data took the deposition of NaviNet's Manager of Strategic Partnerships, Sidharth Jain.  (*See* Pl.'s Mot. to Compel at Ex. Q [Dkt. No. 67].)

23.     On March 1, 2013, following the deposition, Mr. Burton and Mr. Cataxinos again met and conferred via telephone regarding discovery issues, including a change of direction by PPS Data in response to the product demonstration of January 24, 2013 and the deposition of Sidharth Jain on February 21, 2013, wherein Mr. Burton stated that PPS Data planned to amend its complaint to drop NaviNet's "PM Systems" from the list of infringing products and add NaviNet's "Portal" system to the list of infringing products.  During this telephonic meeting, Mr.

Burton also requested that NaviNet produce documents specific to the Portal system.   Mr. Cataxinos, for NaviNet, requested a response from PPS Data, to the host of problems NaviNet had identified in regards to PPS Data's document production.  Mr. Burton responded by stating that it would make more sense for him to provide Mr. Cataxinos with PPS Data's written response to the problems NaviNet had identified in regards to PPS Data's document production. Mr. Cataxinos accepted Mr. Burton's suggestion.   At this point in time, the parties were cooperating and there was a clear understanding that counsel would be following up on questions each side had expressed during this meet and confer; in particular, Mr. Cataxinos was waiting for Mr. Burton to respond as he had promised.  *See* Cataxinos Decl. ¶ 22.

24.     On March 6, 2013, PPS Data filed its Amended Complaint, wherein PPS Data removed reference to "NaviNet PM Systems" as an infringing product.  (*Compare* Compl., ¶ 6 [Dkt. No. 2], *with* First Am. Compl., ¶ 6 [Dkt. No. 59].)

25.     Also on March 6, 2013, this Court held a hearing on PPS Data's Motion to Dismiss NaviNet's counterclaims pertaining to invalidity and non-infringement of the patents-in-suit.  The Court denied PPS Data's Motion, and scheduled the Markman Hearing for September 6, 2013.  (Minute Entry [Dkt. No. 60].)  At the hearing, PPS Data argued that in light of the Court's ruling it would need additional time for discovery on the specific issues of infringement and invalidity of the patents-in-suit.  Cataxinos Decl. ¶ 23.

26.     On March 15, 2013, NaviNet agreed to stipulate to an extension of discovery deadlines following the Court's March 6, 2013 decision.   NaviNet, at PPS Data's request, stipulated that the cutoff for fact discovery be extended until "60 days after Claim Construction Order."  (Joint Mot. for Extending Pretrial Deadlines [Dkt. No. 63].)

27.     On March 20, 2013, this Court entered an Order Extending Pretrial Deadlines, setting the new fact discovery cutoff at "60 days after Claim Construction Order."  [Dkt. No. 64.]

28.     On April 4, 2013, without prior notice and before providing a response addressing any of the problems regarding PPS Data's document production identified by NaviNet on January 17, 2013, PPS Data filed their Motion to Compel.  *See* Cataxinos Decl. ¶ 25.; (Pl.'s Motion to Compel [Dkt. No. 67]).

29.     On April 4, 2013, after filing its Motion to Compel, PPS Data finally provided terse, mostly uncooperative responses to the issues raised by NaviNet in the January 17, 2013 email regarding PPS Data's document production.  *See* Cataxinos Decl., ¶ 25, Ex. 5.

30.     On April 23, 2013, NaviNet served on PPS Data its seventh of a series of document productions, containing NAVI3133–3662, including more manuals and demo scripts. *See id.* ¶ 26.

31.     As of February 8, 2013, NaviNet had already produced to PPS Data the following categories of non-privileged documents that were alleged as missing in PPS Data's September 20, 2012 email:

> a.  information regarding the functionality of the accused NaviNet products;
>
> b.  operating manuals, training manuals, user guides, demo scripts;
>
> c.  marketing;
>
> d.  advertising;
>
> e.  prior art;
>
> f.  customer information and client lists, including past and present customers and potential customers NaviNet is actively pursuing and any contracts entered into with those customers; and

> g.  freedom to operate searches and freedom to operate opinions.

*Id.* ¶ 7.   NaviNet had also produced organizational charts showing NaviNet's organization structure, including parent-subsidiary relationships, officers, managers, and information technology and services departments and divisions.   *Id.*   Also, on April 23, 2013, NaviNet supplemented its document production to include the remainder of all non-privileged documents in each of these categories of which it is aware, subject to its objections.   *Id.*

32.   As of April 23, 2013, NaviNet has not produced documents pertaining to the following categories of documents for the reasons stated below:

> a.  financial information: NaviNet has objected to such document requests for being, *inter alia*, overbroad.  NaviNet also asserts that financial discovery is premature in this case and should be stayed until after claim construction.
>
> b.  research and development: NaviNet has no responsive documents.
>
> c.  manufacturing: NaviNet has no responsive documents.
>
> d.   licensing information: NaviNet has no responsive documents.
>
> e.  communications (extern and internal, written and electronic): NaviNet has objected to such document requests for being, *inter alia*, overbroad.
>
> f.  corporate meeting documents: NaviNet has objected to such document requests for being, *inter alia*, overbroad.
>
> g.  previous lawsuits: NaviNet has no relevant responsive documents.
>
> h.  document retention policies: NaviNet has no responsive documents.

*Id.* ¶ 27.

**ARGUMENT**

**A.  PPS Data's Motion to Compel Must be Denied Because PPS Data Failed to Make a Good Faith Attempt to Confer with NaviNet in an Effort to Obtain the Sought Document Production Without Court Action**

Before filing a motion to compel production of documents, the Federal Rules of Civil Procedure require PPS Data make a satisfactory certification that it "has *in good faith* conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1) (emphasis added).  PPS Data's certification is inaccurate because PPS Data failed to make a good faith effort to resolve the dispute without court action.   The communications between counsel regarding NaviNet's document production is mischaracterized by PPS Data because it fails to account for the continuous, ongoing, back-and-forth nature in which the parties addressed the document requests of both sides.[3]   Moreover, a careful review of the facts in evidence show a pattern of NaviNet cooperatively tailoring its document production according to PPS Data's stated needs at the time. Additionally, PPS Data's certification is also belied by its own disingenuous discovery tactics, including the manner in which it filed the instant motion without prior notice following a cooperative meet and confer.

---

[3] For example, in its motion, PPS assert that after the after the meet and confer on December 14, 2012, "several weeks went by without any additional word back from Navinet on its 'rolling' production."  (Pl.'s Mot. to Compel at 4 [Dkt. No. 67].)  However, PPS Data previously admitted that on December 17, 2012, NaviNet produced the very training manual PPS Data had identified as its *the main priority* during the meet and confer just three days prior. (*Id.* at 3 and Ex. I [Dkt. No. 67].)

1)    PPS Data's Discovery Tactics Impose a Significant Burden on NaviNet

In addition to insisting on an impermissibly broad scope of discovery from NaviNet,[4] PPS Data made its own document production in the form of a useless, wasteful, non-case specific "document dump."  On November 5, 2012, PPS Data served on NaviNet its document production in response to NaviNet's First Set of Request for Production of Document and Things.  *See* Cataxinos Decl. ¶ 13.   This document production included 154,066 pages of documents, including vast amounts of irrelevant, unresponsive and, in many cases, inaccessible documents.  *Id.*  Coincidentally, this document production contained the exact same amount of documents *to the page* produced by PPS Data in other cases,[5] regardless of the specific discovery requests propounded by the opposing parties.  *See id.*  Such behavior has led to PPS Data being repeatedly accused of using excessive discovery as a weapon to compel settlement.[6]   The inordinate amount of time expended by NaviNet to decipher the document production of PPS Data had a direct impact on any delay in NaviNet's efforts to produce document to PPS Data. (*See* Pl.'s Mot. to Compel at Ex. N [Dkt. No. 67]); Cataxinos Decl. ¶ 26.

2)    NaviNet and PPS Data Had Both Raised Issues Regarding the Opposing Party's Production Documents

PPS Data was not the only party to raise issues and concerns regarding the opposing party's document production.  On January 17, 2013, NaviNet identified to PPS Data via email a

---

[4] *See supra* n. 1 and  p. 7, ¶ 3.

[5] Such cases include at least *PPS Data, LLC v. Passport Health Communications, Inc.*, Case No. 2:12-cv-00438-RJS-DBP (D. Utah, filed May 4, 2012) and *PPS Data, LLC v. The SSI Group, Inc.*, Case No. 2:12-cv-00436-BSJ (D. Utah, filed May 4, 2012).  Cataxinos Decl. ¶ 13.  In fact, Mr. Cataxinos confirmed with defense counsel in both of these cases that PPS Data produced documents with the exact same range of Bates Numbers, PPS000001–154066. *Id.*

[6] See generally Def.'s Response to Pl.'s Mot. for an Order Compelling Production of Documents, *PPS Data, LLC v. Availity, LLC*, Case No. 3:11-cv-00747-TJC-JRK (M.D. Fl., filed Jul. 28, 2011); Def.'s Memo. in Opposition to Pl.'s Second Mot. to Compel, *PPS Data, LLC v. Passport Health Communications, Inc.*, Case No. 2:12-cv-00438 (D. Utah, filed May 4, 2012).

number of issues relating to PPS Data's problematic and burdensome document production. Cataxinos Decl. ¶ 17.  In this email, NaviNet provided to PPS Data a detailed itemization of the document categories it had produced, those it objected to, and those it is continuing to work to produce.  *Id.*  However, despite NaviNet's objections to the scope of PPS Data's document requests, and its concerns with PPS Data's own document production, NaviNet continued to produce documents in a "rolling production" while the parties sorted out the issues raised by each other pertaining to document production.  *Id.*  NaviNet's rolling production included, even prior to the filing of the instant motion, the most pertinent documents, particularly those pertaining to functionality of the accused products, which is critical to the threshold issue in this case: whether NaviNet's products even infringe the patents-in-suit.[7]  With that information, PPS Data subpoenaed at least 9 of NaviNet's customers resulting in the production of thousands of pages of additional documents containing information confirming that which had already been produced by NaviNet.  *Id.*

On the other hand, PPS Data refused to address even a single issue raised by NaviNet regarding PPS Data's document production, despite its promises, until *after* filing the instant motion.  *Id.*, ¶ 25.  In particular, PPS Data on January 22, 2013 promised that "we intend to address each point of your email in full before our meeting." *See id.*, ¶¶ 18, 25.  It did not do so. And at the meet and confer on March 1, 2013, PPS Data declined to address the issues regarding its own document production, instead stating that it would make more sense for Mr. Burton to

---

[7] For example, prior to the instant motion, NaviNet had already produced operating manuals and instructions of the alleged infringing devices, had allowed a recorded demonstration of the alleged infringing devices witnessed by PPS Data's expert, and provided for PPS Data to take the deposition of Sidharth Jain, NaviNet's Manager of Strategic Partnerships.  *See supra* at p. 4, 15 (¶ 32); Cataxinos Decl. ¶ 7.  In addition, NaviNet had produced documents pertaining to marketing and advertising materials, as well as lists of customers of the alleged infringing products, prior art of the patents-in-suit, and freedom to operate searches and opinions.  *Id.*

provide Mr. Cataxinos with a written response to the problems NaviNet had identified in regards to PPS Data's document production.  *See id.*, ¶ 22.  In fact, PPS Data did not reply to the issues raised regarding its document production, until *after* it had already filed the instant Motion to Compel.  *Id.*, ¶ 25.  Even then, the answers were dismissive and unhelpful.  *Id.*, Ex. 5.

PPS Data filed the instant Motion to Compel despite receiving a consistent rolling production of documents from NaviNet.  Moreover, PPS Data filed the instant motion prior to addressing, even in the slightest way, any of the issues NaviNet raised regarding PPS Data's document production.  For at least these reasons, PPS Data has not made a *good faith* effort to confer with NaviNet relating to the issues identified in the instant motion.  Accordingly, PPS Data's Motion to Compel is premature and should be denied.

### B. PPS Data's Document Production is Currently More Than Sufficient For the Present Stage of Discovery

When PPS Data's Motion to Dismiss NaviNet's counterclaims was denied at the hearing on March 6, 2013, PPS Data argued that it needed an extension of the fact discovery cutoff date so that it could seek more discovery specifically relating to the issues of infringement and invalidity.  Cataxinos Decl. ¶ 23.  NaviNet stipulated to extend the fact discovery cutoff date until "60 days after Claim Construction Order."  *Id.* ¶ 24.  For issues relating to infringement and invalidity, the pertinent factual issues relate to the functionality of NaviNet's accused products and prior art of the patents-in-suit.  NaviNet has produced numerous documents pertaining to the functionality of the accused products, including numerous manuals, guides, has allowed a recorded demonstration of the alleged infringing devices witnessed by PPS Data's counsel and expert, and provided for PPS Data to take the deposition of Sidharth Jain, NaviNet's Manager of Strategic Partnerships.  *Id.*  It is difficult to contemplate a more instructive manner of discovery

regarding functionality of the accused products than the demonstration provided by NaviNet on January 23, 24, 2013.   Moreover, NaviNet's production of manuals, instructions and user's guides is already complete.   *See id.*   This production of documents and other discovery has obviously been valuable to PPS Data, because it directly influenced PPS Data to amend the complaint to remove "NaviNet PM Systems" from the list of accused products.   (*Compare* Pl.'s Compl., ¶ 6 [Dkt. No. 2], *with* Pl.'s First Am. Compl., ¶ 6 [Dkt. No. 59].)

Moreover, NaviNet's production of documents pertaining to marketing, advertising, its corporate structure, customers, licensing, R&D, manufacturing, prior art, previous lawsuits and document retention policies is already complete, its objections withstanding.   Cataxinos Decl. ¶¶ 7, 9, 26.   In summary, NaviNet's rolling document production is already, voluntarily, complete, with the exception of documents pertaining to financial information, communications, and corporate meetings, which are currently the subject of NaviNet's objections.   *Id.*   PPS Data has not been harmed or prejudiced by NaviNet's rolling production, even if it must wait to receive documents relating to financial information, communications, and corporate meetings.

### C.   NaviNet's Objections to the Requests Seeking Communications Should be Sustained

PPS Data's requests for production of documents containing NaviNet communications (Request Nos. 17, 28, 41 and 42) are overly broad on their face, and NaviNet stated objections on such grounds.   (*See* Pl.'s Mot. to Compel at Ex. B, pp. 12, 18–19, 26–27 [Dkt. No. 67].)   PPS Data alleges that these objections are nothing more than "boilerplate objections," asserting that "it is beyond dispute" that such objections are "unavailing and without merit," yet PPS Data does not point to a single controlling case for such a proposition.   (*See id.* at 8 [Dkt. No. 67].)

However, the Supreme Court has emphasized that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression …'" *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (cited by *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-649 (10th Cir. 2008)).  Furthermore, it is widely recognized that "when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2668301 (D. Colo. July 1, 2008); *see also PharMerica Long-Term Care, Inc. v. Infinia Healthcare Cos., LLC*, 2010 U.S. Dist. LEXIS 83155 (D. Utah July 30, 2010) (concluding that document requests that seek "all correspondence for a four-year period and do not contain appropriate subject-matter limitations" are "overly broad on their face").

Each of PPS Data's Request Nos. 17, 28 and 41–42 (the specific requests identified by PPS Data in its Motion) are overbroad on their face.  For example, the Requests seek:

> **Request No. 17:** All Documents and things relating to, constituting, or memorializing any communication between You and any former, current, and/or prospective Customers related in any way to Your Products.

> **Request No. 28:** All Documents and things relating to praise, criticism, or commentary about Your Products, including, without limitation, articles, press releases, advertisement, correspondence, statements, or other testimonials by Your representatives, distributors, customers, potential customers, or competitors.

> **Request No. 41:** All Documents and things relating to any communication between You and any other Person pertaining to Your Products, including internal and external communications.

> **Request No. 42:** All Documents and things relating to any communication between You and any other Person pertaining to PPS, the PPS Patents or this

Action or related legal proceedings, including internal and external communications.

(*See* Pl.'s Mot. to Compel at Ex. A, pp. 8, 10, 12 [Dkt. No. 67].)  None of these requests are limited by time and none contain appropriate limitations on subject matter.  PPS Data has refused to narrow these requests to a relevant and manageable subset.  Cataxinos Decl. ¶ 17. Accordingly, because these requests are facially overly broad, and because PPS Data has failed to show the relevancy thereof, this Court should not compel NaviNet to produce such documents.

### D.  Research and Development

PPS Data complains that NaviNet has failed to produce documents pertaining to research and development responsive to Request Nos. 13–14 and 18–23.  (Pl.'s Mot. to Compel at 11–12 [Dkt. No. 67].)  In response to these requests, NaviNet has already produced all responsive technical documents pertaining to the accused products, including operation manuals, training manuals, guides and demo scripts, its objections withstanding.  Cataxinos Dec. ¶ 7. Accordingly, this Court should deny PPS Data's Motion to Compel.

### E.  NaviNet has Produced Marketing and Advertising Documents

PPS Data complains that NaviNet has failed to produce document pertaining to marketing and advertising responsive to Request Nos. 24–28.  (Pl.'s Mot. to Compel at 12–14 [Dkt. No. 67].)  These Requests are as follows:

> **Request No. 24:** All Documents and things sufficient to identify all Persons involved with, responsible for, or knowledgeable about sales, advertisement, marketing, promotional, and other materials used by You to advertise, market, or otherwise promote Your Products.

> **Request No. 25:** All sales, advertisement, marketing, promotional, and other materials used, either currently or in the past, by You to advertise, market, or otherwise promote Your Products, including without limitation: television, radio, Internet advertising, print advertising, brochures, trade show promotional

material, catalogues, prices lists, sell sheets, product descriptions, websites, and sales literature.

**Request No. 26:** All Documents that in any way reflect, evidence, memorialize, constitute or that refer or relate to marketing, sales, advertising, and/or promotional materials prepared by You, caused to be prepared by You, or of which You are aware, for Your Products.

**Request No. 27:** All Documents sufficient to show the costs You incurred to advertise, market, and/or promote Your Products.

**Request No. 28:** All Documents and things relating to praise, criticism, or commentary about Your Products, including, without limitation, articles, press releases, advertisements, correspondence, statements, or other testimonials by Your representatives, distributors, customers, potential customers, or competitors.

(*See* Pl.'s Mot. to Compel at Ex. A, pp. 9–10 [Dkt. No. 67].)   In response to these requests, NaviNet has already produced all non-duplicative responsive documents of which it is aware, subject to its objections.  *See* Cataxinos Decl. ¶ 7.  Accordingly, because NaviNet has already produced all responsive documents, this Court should deny PPS Data's Motion to Compel.

### F.  Document Retention

PPS Data complains that NaviNet has failed to produce document pertaining to its document retention policies responsive to Request Nos. 54–74.  (Pl.'s Mot. to Compel at 14 [Dkt. No. 67].)  NaviNet has no documents relating to a document retention policy.  Cataxinos Decl. ¶¶ 9, 27.

### G.  Privilege Log

PPS Data asserts that NaviNet is required to produce a privilege log setting forth the documents withheld as being protected by the attorney-client privilege and/or the work-product doctrine.  PPS Data has also failed to provide a privilege log to NaviNet.  At a telephonic meet and confer concerning NaviNet's complaints as they relate to PPS Data's document production,

held on April 24, 2013, both parties agreed to serve upon the other a privilege log.  Cataxinos

Decl. ¶ 28.  Therefore, NaviNet should not now be compelled to produce a privilege log.

### H.  NaviNet is Entitled to Payment of Expenses

For the foregoing reasons, PPS Data's Motion should be denied.  Under Rule 37(a)(5)(B),

if the motion to compel is denied, "the court … *must* require the movant, the attorney filing the

motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in

opposing the motion, including attorney's fees."  NaviNet was required to expend a significant

amount of time and resources opposing the instant motion.  Cataxinos Decl. ¶ 29.  Moreover,

PPS Data's burdensome discovery tactics, including prematurely filing the instant motion and

producing its own documents in a wasteful and non-case specific document dump, preclude a

finding by the Court that the instant motion filed by PPS Data was "substantially justified" or

that involves other circumstances that would "make an award of expenses unjust."  FED. R. CIV.

P. 37(a)(5)(B).

### I.  Attorney's Fees or Sanctions are Unwarranted against NaviNet

Even if the instant Motion to Compel is granted, "the court must not order" payment of

expenses if: "(i) the movant filed the motion before attempting in good faith to obtain the

disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or

objection was substantially justified; or (iii) other circumstances make an award of expenses

unjust."  FED. R. CIV. P. 37(a)(5).  Even if the Court is inclined to grant PPS Data's Motion to

Compel, attorney's fees or sanctions in the present case are not warranted due to PPS Data's lack

of a good faith effort to resolve the dispute without court action.  *See Naviant Mkt. Solutions,*

*Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 186–87 (3d Cir. 2003) (reversing award of expenses due

to clear lack of good faith to resolve dispute without court action when counsel summarily refused to consider extending time to answer interrogatories, and consistently threatened opposing counsel with motion to compel or for contempt).  As set forth above, PPS Data failed to make a good faith effort to resolve the dispute without court action by filing the instant motion while the parties were still in the midst of mutual discussions concerning discovery issues both sides had raised, and NaviNet was specifically waiting on PPS Data to respond to the issues NaviNet raised regarding PPS Data's document request.  Furthermore, PPS Data filed the instant motion without prior notice or warning to NaviNet and while document production by NaviNet was ongoing.  For at least these reasons, this Court should rule that PPS Data failed to make "a good faith effort to obtain the disclosure or discovery without court action," and decline to award expenses to PPS Data.

Additionally, NaviNet's objection to the overbroad and burdensome nature of PPS Data's discovery requests is justified.  Despite the fact that PPS Data has insisted on an impermissibly broad scope of discovery, NaviNet proceeded and has continued to make consistent, rolling production of documents to PPS Data, beginning with the most pertinent documents as identified by PPS Data counsel.  Accordingly, the Court should find that any "nondisclosure, response, or objection" by NaviNet "was substantially justified" under Rule 37(a)(5), and decline to award PPS Data expenses.

Furthermore, PPS Data's own efforts to drive up the cost of litigation, bury NaviNet with irrelevant, non-responsive and duplicitous documents, along with its refusal to address NaviNet's concerns regarding PPS Data's problematic document production, certainly qualify as "other

circumstances [that] make an award of expenses unjust" under Rule 37(a)(5).  Accordingly, for this additional reason, this Court should decline to award PPS Data attorney's fees or expenses.

## CONCLUSION

For the reasons set forth above, PPS Data's Motion to Compel Full Production of Documents from NaviNet should be denied.  Accordingly, this Court should award NaviNet its reasonable expenses in opposing the motion.  In the alternative, if the Court is inclined to grant the Motion to Compel, expenses, attorneys fees and/or sanctions against NaviNet are unwarranted.


DATED this 26th day of April, 2013.


/s/Edgar R. Cataxinos_____
Edgar R. Cataxinos
H. Dickson Burton
Krista Weber Powell
Brandon S. Mecham
TRASKBRITT, PC
230 South 500 East
Salt Lake City, Utah 84110

*Attorneys for Defendant NaviNet, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of April, 2013, a true and correct copy of

the foregoing was electronically filed with the Clerk of the Court and delivered by CM/ECF and

by the method(s) indicated below to the following:

James T. Burton                                   __X__   CM/ECF Filing System
Michael F. Krieger                           _____   United States Mail
Joshua S. Rupp                             _____   Federal Express
KIRTON MCCONKIE                __X__   Email
1800 Eagle Gate Tower
60 East So. Temple
Salt Lake City, UT 84145-0120

27