MICHAEL F. KRIEGER (Utah Bar No. 5984)
*mkrieger@kmclaw.com*
JAMES T. BURTON (Utah Bar No. 11875)
*jburton@kmclaw.com*
JOSHUA S. RUPP (Utah Bar No. 12647)
*jrupp@kmclaw.com*
**KIRTON McCONKIE, P.C.**
1800 World Trade Center
60 East South Temple
P.O. Box 45120
Salt Lake City, Utah 84145-0120
Telephone: (801) 328-3600
Facsimile: (801) 321-4893

*Attorneys for Plaintiff PPS Data, LLC*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PPS DATA, LLC, a Nevada limited liability company,<br><br>    Plaintiff,<br>vs.<br><br>NAVINET, INC., a Delaware corporation,<br><br>    Defendant. | **PPS DATA, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL FULL PRODUCTION OF DOCUMENTS**<br><br>Case No.: 2:12-cv-00439-RJS-EJF<br><br>Hon. Judge Robert J. Shelby<br><br>Hon. Magistrate Judge Evelyn J. Furse |

Pursuant to Federal Rule of Civil Procedure[1] 37 and DUCivRs 7-1(b) & 37-1, Plaintiff PPS Data, LLC ("PPS"), by and through undersigned counsel, hereby respectfully provides this Reply Memorandum in further Support of PPS' Motion to Compel Defendant NaviNet, Inc.'s ("Navinet") Full Production of Documents.

---

[1] The Federal Rules of Civil Procedure are hereinafter referred to as the "Rule" or "Rules".

## I. Navinet's Attempt to Cloud the Issues via Red Herring Arguments Should be Ignored

Notwithstanding the prolixity of Navinet's opposing memorandum (the "Opposition"), the Opposition is long on red herrings and short on substance. Specifically, of the 26 pages consumed (not to mention the 11 page declaration of counsel), Navinet's Opposition devotes little more than a handful of pages to actually opposing the substantive merits of PPS's Motion to Compel. Indeed, the vast majority of Navinet's Opposition is nothing more than a diatribe on irrelevant distractions designed to obscure the issues at bar. For this reasons, it is critical to dispense with Navinet's litany of decoy arguments from the outset so as to clarify the actual issues at bar before discussing the same.

### A. PPS' Motion to Compel is Premised on Serial Meet and Confers

In a vain attempt to avoid the merits of PPS' Motion to Compel, Navinet's Opposition oft repeats the hollow contention that the Motion to Compel is (somehow) "premature" (Opp. at p.5) owing to an alleged failure to conduct a meet-and-confer as required under Rule 37(a)(1) and DUCivR 37-1(a). (*See* Opp. at p.5 (contending that PPS neglected to complete "a legitimate meet and confer" with Navinet); *see also, e.g., id.* at pp. 1, 14 (¶ 28), 16-19, 24-25.) Navinet's own explicit admission that the parties met and conferred, not just once as required under the applicable rules, but <u>three separate times</u> over the course of some nine months obliterates Navinet's unfounded assertions to the contrary. (Opp. at p.8 (¶ 7) ("On September 26, 2012, the parties met and conferred via telephone"), p.10 (¶ 13) ("On December 14, 2012, the parties . . . met and conferred via telephone"), p.12 (¶ 23) ("On March 1, 2013, [the parties] . . . again met and conferred via telephone").) In short, there is no dispute that the parties met and conferred about the very issues raised in PPS' instant Motion to Compel <u>on three separate occasions</u>. (*See id.*) The applicable rules require nothing more. *See* FED. R. CIV. P. 37(a)(1) (requiring "a certification that the movant has in good faith conferred"); DUCIVR 37-1(a)(requiring "a reasonable effort to reach agreement" and "the date, time, and place of such consultation").

4836-0062-8755.1

Without pointing to any authority, Navinet suggests that the parties three meet and confers were somehow incomplete or neutralized by Navinet's promised "rolling" production. (*See, e.g.,* Opp. at 1, 5, 16-19.) Likewise, Navinet suggests that PPS' Motion to Compel was (somehow) filed "without prior notice" despite Navinet admittedly (1) receiving numerous written demands regarding its deficient production and (2) participating in three separate meet and confers. (*E.g., id.* at p.16; *see also id.* at pp. 7 (¶ 6), 8 (¶ 7), 9 (¶ 12), 10 (¶ 13) & 12 (¶ 23).) Notwithstanding Navinet's unsupported positions, however, neither Rule 37(a)(1) nor DUCivR 37-1(a) require "notice" beyond a good faith meet and confer. More importantly, neither of the applicable rules permit one party to unilaterally and artificially hold the discovery process hostage by feigning interest in cooperation and repeating verbal assurances of a "rolling" production followed only by a trickling handful of documents (which are not even fully responsive to the relevant requests) spread out over numerous months. This, unfortunately, is precisely what has happened here. Navinet has sought to lull PPS into a false sense of security by repeatedly promising a complete, albeit "rolling," production but now, nearly ten months after PPS' requests for production were served, Navinet's document production is still grossly inadequate and incomplete, with Navinet's last three "series of documents" prior to the Motion to Compel comprising only 39 pages, 20 pages, and 13 pages, respectively. (*See* Opp. at pp. 10 (¶ 14) & 12 (¶¶ 20-21).) Under such circumstances, the applicable rules authorize PPS' Motion to Compel and Navinet cannot short-circuit that authorization merely by pretending to be cooperative. In short, it is time for Navinet's stalling tactics to finally come to an end.

Further to this point, Navinet's newly-minted position with respect to financial and sales documents is revealing. Specifically, over the past ten months, Navinet has repeatedly assured PPS that its so-called "rolling" production would include all responsive documents, including Navinet's financial and sales documents. (*See* Dkt. 67 at pp. 3-6 (¶¶ 5-21).) Nevertheless, only *after* PPS finally filed the instant Motion to Compel, Navinet has now, for the first time, sought a

protective order in a *post hoc* attempt to justify the admitted want of financial and sales documents in its production. (*See* Opp. at p.6 n.2; *see also id.* at pp. 8 (¶ 6(a)) & 15 (¶ 32(a)); Dkt. No. 74 (Navinet's Motion for Protective Order).)[2] In short, Navinet's discovery strategy is one premised on delay and obstruction: produce as little as possible while verbally forestalling a motion to compel based on disingenuous promises of a "rolling" production and, once a motion to compel is inevitable or already on file, only then seek to legitimize the missing production.

It is clear that Navinet does not intend to willingly comply with its discovery obligations in the absence of a Court Order compelling such compliance. Moreover, PPS is not required to perpetually participate in cyclical and serial meet and confers, thereby allowing Navinet to indefinitely postpone meaningful participation in the discovery process with impunity. In sum, PPS has complied with its meet and confer obligations in a good faith effort to secure Navinet's production without Court involvement but to no avail.

> B. <u>Claim Construction Has Been Fully Briefed and is Totally Irrelevant for Purposes of Resolving PPS' Instant Motion to Compel</u>

Beyond Navinet's misguided attempt to circumvent the merits of the Motion to Compel by suggesting that three meet and confers are somehow not enough, Navinet seeks to further distract the Court with irrelevant and useless argument regarding claim construction issues. (*See* Opp. at pp. 2-4.) At the outset, as Navinet acknowledges (*see id.* at p.3), claim construction has been fully briefed elsewhere and is set to be heard on September 4, 2013. (*See* Dkt. Nos. 41, 42,

---

[2] Notably, as will be more fully addressed in PPS' forthcoming opposition to Navinet's Motion for Protective Order, Navinet's objections to financial and sales documents as "premature" have been waived. *Beverly v. Depuy Orthopaedics, Inc.*, No. 3:07-CV-137 AS, 2008 WL 45357 at *2 (N.D. Ind. 2008) (unpublished). Specifically, if Navinet's contention that all financial and sales documents should be undiscoverable until after claim construction has been resolved has any merit whatsoever (which it does not), any such objection must necessarily have been articulated in Navinet's August 27, 2012 written discovery responses. *See id.*; *see also* FED. R. CIV. P. 34(b)(2)(A)-(C) (the reasons for objecting to any document request must be set forth within 30 days of being served with the requests). Navinet waited to raise such objections until May 7, 2013. (*See* Dkt. No. 74.) As such, Navinet's objections have been waived.

47 & 60.) Moreover, as set forth in the claim construction briefing, claim construction turns on the meaning a person of ordinary skill in the art would ascribe to the claim language at issue in view of, *inter alia*, the specifications of the patents-in-suit. (*See* Dkt. No. 41 at pp. 2-7.) This analysis is wholly divorced from Navinet's accused products, as well as Navinet's document production. (*See id.* at n.2.) As such, claim construction has nothing to do with the instant Motion to Compel. Indeed, Navinet's allusions to the contrary are an irrelevant distraction designed to either divert the Court's attention or to improperly re-argue Navinet's claim construction positions.[3] Either way, Navinet's approach is improper and should be ignored.

Importantly, while the claim construction hearing is on September 4, 2013 and discovery will extend until after claim construction is resolved, this is no excuse for Navinet's protracted discovery delays. Indeed, contrary to Navinet's self-serving and unsupported assertions that its document production is "sufficient for the present stage" of litigation (*see* Opp. at § B (capitalization omitted)), Judge Shelby has already given the parties the following guidance:

> I'll leave it to you and your clients to decide whether you want to try to get fact discovery and expert discovery concluded by the time of the Markman hearing, or if you want to extend the dates beyond that, you may, but **we'll move down parallel tracks**. **I think you'll all be well served to get as much done as you can between now and September** . . . .

(March 6, 2013 Hearing Tr. at p.46, ll.17-23 (emphasis added), excepts attached as **Exhibit "A".**) Indeed, at the above-referenced hearing, counsel for Navinet expressly acknowledged the

---

[3] In attempting to re-argue its claim construction positions, Navinet once again seeks to exalt pure attorney argument over the express teachings of the patents-in-suit as well as the testimony of qualified experts in the relevant field. (*See* Opp. at pp. 2-4 (relying solely on the declaration of counsel); *see also* Dkt. No. 47 at pp. 24-30 (incorporated herein by reference).) This is contrary to law. (*See, e.g.,* Dkt. No. 47 at pp. 24-30.) In any event, pursuant to DUCivR 7-1(b)(1)(B), PPS hereby formally raises an evidentiary objection to the Declaration of Edgar R. Cataxinos (Dkt. No. 73) filed in connection with Navinet's Opposition in as much as Mr. Cataxinos' declaration falsely states that he (as Navinet's outside counsel) has "personal knowledge" about the facts set forth therein after which Mr. Cataxinos attempts to testify about what Navinet's accused products do or do not do and about the meaning of certain claim language which this Court has yet to resolve. (*See* Dkt. No. 73 at ¶¶ 1-4.)

5

Court's observation that "discovery could be ongoing, could it not, between now and [September]" stating that discovery is indeed "open right now." (*See id.* at p.48, ll.3-6.) It is not simply Navinet's prerogative to wait until the very end of the discovery period to comply with its discovery obligations. Indeed, prudence, as well as the Court's guidance, counsels to the contrary. Moreover, PPS served the relevant discovery requests ten months ago and Navinet must respond in accordance with the Rules, not when it unilaterally decides that it is ready to turn the requested documents over. This is true notwithstanding PPS good faith willingness to initially only receive a fraction of Navinet's relevant and responsive documents (*see, e.g.,* Opp. at p.4 (discussing the initial production of certain documents in order facilitate PPS' access to non-public information sufficient for PPS to amend its Complaint with respect to Navinet's accused products)) on the basis of Navinet's repeated assurances of a full, albeit "rolling," production. To hold otherwise would penalize PPS for attempting to work with Navinet in good faith while simultaneously rewarding Navinet for taking advantage of PPS' patience and good faith attempts to accommodate Navinet's full production over a reasonable amount of time.

C. PPS' Production, Subpoena's to Third Parties, and Other Litigations Are Irrelevant

The vast majority of Navinet's Opposition is devoted exclusively to alleged issues Navinet apparently has with PPS' document production. (*See* Opp. at pp. 5, 9-14 (¶¶ 11, 16, 17, 23, 28 & 29), 16-19 & 23-26.) Critically, Navinet's discovery responses, due months before Navinet's own discovery requests were even served (*compare id.* at ¶ 4, *with id.* at ¶ 9), are neither dependent on nor remotely related to PPS' document production. Navinet provides neither reasoned analysis nor authority to the contrary beyond Navinet's unsupported belief that both parties' separate discovery efforts must for some reason proceed in perfect synchronization. Such a requirement, however, is foreign to the Rules governing discovery. Moreover, any motion Navinet believes it has grounds to file has neither been filed nor can such a motion, if any, "be included in a response . . . memorandum." DUCivR 7-1(b)(1)(A). At bottom,

4836-0062-8755.1

Navinet's apparent dissatisfaction with PPS' document production is not currently before this Court and the same has no bearing on the resolution of the instant Motion to Compel. As such, Navinet's verbose reliance on PPS' document production is irrelevant and serves no end beyond attempting to divert the Court's attention away from Navinet's deficient production.

The foregoing is equally true with respect to Navinet's citation to various third party subpoenas PPS has served in this matter. (*See* Opp. at p.12 (¶ 19) & 18.) Indeed, Navinet does not even attempt to explain why PPS' subpoenas are even relevant, let alone (somehow) improper. On the contrary, Rule 45 specifically authorizes PPS' subpoena practice and allows PPS to corroborate Navinet's discovery positions and production (or lack thereof) via documents and discovery from Navinet's customers. This is precisely what PPS has done.

Finally, Navinet attempts to smear PPS with an claim of impropriety by citing to PPS' document production in other litigations and, astonishingly, the positions other defendants have taken in discovery disputes in other PPS litigations. (*See* Opp. at p17 & nn. 5-6 & 24.) Such issues totally irrelevant for purposes of evaluating the instant Motion to Compel. Moreover, Navinet relies on the positions of a similarly-situated defendant in another PPS litigation despite the fact that the court in that case granted, in significant part, PPS' motion to compel. (*Compare id.* at n.6 (citing *PPS Data, LLC v. Availity, LLC*, Case No. 3:11-cv-747-TJC-JRK (M.D. Fl.), *with* Order granting in part PPS' motion to compel, attached hereto as **Exhibit "B"**.)

At bottom, Navinet spends the vast majority of its Opposition arguing about tangential issues which are either totally irrelevant, misrepresented, or which rely on conjecture and unsupportable inference. Accordingly, the bulk of Navinet's Opposition should be ignored.

II. **Navinet Raises Very Little Opposition to the Merits of PPS' Motion to Compel**

Turning to the merits of the Motion to Compel, the comprehensive balance of Navinet's substantive response is found predominantly on pages 20 through 23 at Sections C-G. Each of the meager arguments spread across these scant four pages will be addressed in turn below.

A.  Navinet's Boilerplate Objections Remain Insufficient

Navinet does not dispute the host of authority holding that boilerplate objections, without more, are insufficient.[4] (*See* Opp. at pp. 20-21.) Instead, Navinet shrugs this authority off as not "controlling." (*Id.* at p.20.) This, despite the clear mandate in the Rules themselves that any objection must be accompanied by "the reasons" therefore. FED. R. CIV. P. 34(b)(2)(B). Put differently, simply articulating an objection, however meritorious, is not enough; litigants must support each objection by articulating "the reasons" for the objection. *Id.*; *see also* n.4. This, Navinet has not done. Indeed, beyond simply trivializing the authorities relied on in the Motion to Compel without citing any authority to the contrary or articulating why PPS' authorities are unpersuasive, Navinet does not dispute that all of its discovery objections are indeed boilerplate, unadorned by any particularized facts. (*See* Opp. at pp. 20-21.) For this reason alone, Navinet's boilerplate objections are unavailing and insufficient to justify Navinet's deficient production.

Instead of substantiating any of its boilerplate objections, Navinet simply changes the subject and asserts that relevance is a threshold requirement for all discovery. PPS fully agrees. Relevancy, however, presents an exceedingly low threshold. *See, e.g., Jones v. Commander*, 147 F.R.D. 248, 250 (D. Kan. 1993).[5] Indeed, Navinet's own authority hold as follows:

---

[4] *See e.g., Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 359 (D. Md. 2008) ("boilerplate objections . . . are improper unless based on particularized facts."); *Beverly*, 2008 WL 45357 at *2) ("An underdeveloped argument, or argument not raised at all, is a waived argument."). *see also Cunningham v. Standard Fire Ins. Co.*, Civ. No. 07-cv-02538-REB-KLM, 2008 WL 2668301 at *1 (D. Colo. July 1, 2008) (unpublished) (**relied on in Navinet's Opposition**) (holding that **"the objecting party cannot sustain th[e] burden [of establishing a lack of relevancy] with boilerplate claims that the requested discovery is oppressive, burdensome or harassing**." (emphasis added)).

[5] "Relevancy has been defined as encompassing any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible

8

> Relevancy is broadly construed, and a request for discovery should be considered if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy . . . .

*Cunningham*, 2008 WL 2668301 at *1. Nevertheless, Navinet simply sidesteps its burden to "establish the lack of relevancy" with the conclusory and boilerplate assertion that PPS' discovery requests are overly broad on their face. (*See* Opp. at p.21.) Nevertheless, Navinet, once again, fails to put any meat on the bones of this unadorned boilerplate objection. (*See also id.* at n.1 (simply concluding, without any explanation, that PPS' definition of "Product(s)," which specifically identifies Navinet's products which stand accused of infringement, is "vastly overbroad" but never substantiating this conclusory assertion).) As Navinet has yet to provide either the Court or PPS with any basis for its boilerplate objections, the same are insufficient.

B. <u>Numerous Documents have Yet to Be Produced Despite Ten Months of Discovery</u>

i. *Navinet Admits that All Financial Documents have Been Intentionally Withheld*

Notwithstanding nearly ten months of discovery, and Navinet's repeated assurances that a full production was forthcoming on a "rolling" basis during the interim, Navinet has admitted to intentionally withholding all of its financial documents and only seeking to justify the same via a motion for protective order filed *after* PPS moved to compel. (*See* Opp. at p.8 (¶ 6(a)); *see also* Dkt. No. 74.) Notably, Navinet essentially concedes that its financial documents are relevant and discoverable by virtue of failing to articulate anything to the contrary in its Opposition, but, contrary to this Court's guidance (*see* Ex. B), Navinet seeks to postpone any such production until after claim construction is fully resolved. As will be more fully set forth in PPS' forthcoming opposition to Navinet's Motion for a Protective Order, Navinet's conclusory assertions of serious injury absent a protective order are insufficient to justify Navinet's abject failure to produce even a single financial document to date. The same must be compelled.

---

bearing upon the subject matter of this action." *See also Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 169, 138-39 (W.D. Okl. 1977) ("Relevancy is broadly construed at the discovery stage").

*ii.   Navinet is Also Intentionally Withholding Communications/Corporate Documents*

Again, Navinet acknowledges that it is intentionally withholding all of its communications and corporate meeting documents. (*See, e.g.,* Opp. at p.8 (¶ 6(k) & (l)).) The sole basis articulated in Navinet's Opposition justifying the same is Navinet's repetition of unadorned boilerplate objections. (*See id.* at pp. 20-21.) Indeed, outside of simply listing four of PPS' requests and summarily concluding that they are (somehow) facially overbroad, Navinet provides no explanation as to why PPS is not entitled to even a single document categorized as either communications or corporate meeting documents. (*See id.*) This is insufficient and Navinet's production must be compelled. *See* FED. R. CIV. P. 34(b)(2)(C) (requiring at least a partial production to the extent documents fall outside of a cognizable objection).

*iii.   The Complete Production of Marketing/Advertising, Use/Functionality & Customer Information Documents Must be Confirmed by Navinet*

While refusing to previously confirm that it has produced all responsive marketing/advertising, use/functionality & customer information documents, Navinet's <u>counsel</u> has stated that all such documents have been produced. (*See, e.g.,* Opp. at p.8 (¶ 6(b), (c) & (g)-(i)); *see also id.* at pp. 4-5, 14 (¶31), 20, 22-23.) This contention is dubious given Sidharth Jain's (Navinet's employee) express testimony that many operating guides/manuals specific to particular customers have not been produced. (*See* Dkt. No. 67-17 at 46:18 – 47:2, 145:20 – 146:5.) Nevertheless, if Navinet's production is indeed complete (which PPS disputes), such representations should be compelled from Navinet itself, as opposed to its counsel. Moreover, to the extent PPS uncovers additional responsive documents falling within such categories (which is highly likely given Mr. Jain's testimony to date, and given the status of Navinet's meager production to date), via either depositions or third-party subpoenas, Navinet and/or its counsel should subsequently be held in contempt for any misrepresentations to the Court.

4836-0062-8755.1

*iv. Any Non-Existence of R & D, Document Retention Policies, Manufacturing, Licensing, or Prior Lawsuit Documents Exist Must be Confirmed by Navinet.*

For the first time, Navinet's <u>counsel</u> has represented that Navinet has no responsive documents falling within any of the following categories: R & D, document retention policies, manufacturing, licensing, or prior lawsuits. (*See, e.g.,* Opp. at p.8 (¶ 6(d), (e), (j), (m) & (n)); *see also id.* at p.15 (¶ 32 (b)-(d) & (g)-(h)); pp. 22-23.) Again, it is hard to imagine that Navinet does not have a single document reflecting the development of even a single one of its accused products or any documents setting forth basic document retention policies. Nevertheless, to the extent such representations are accurate, the same should be compelled from Navinet itself, as opposed to its counsel. Moreover, to the extent any such representations ultimately prove false, Navinet and/or its counsel should subsequently be held in contempt for any misrepresentations.

*v. Navinet Admits that A Privilege Log is Necessary and Forthcoming*

Navinet contends that a privilege log is only necessary as part of a mutual exchange between the parties. (*See* Opp. at pp. 23-24.) This is not supportable. Pursuant to Rule 26(b)(5), and Navinet's demonstrable penchant for promising discovery but failing to deliver, an Order compelling Navinet's privilege log should be entered.

### III. PPS is Entitled to An Award of Fees and Costs

In view of PPS' nine-months long struggle to work with Navinet in good faith prior to seeking relief from the Court and Navinet's (1) excessive discovery delays, (2) largely missing production, (3) deliberate misleading statements regarding a "rolling" production that largely still has yet to materialize, (4) insufficient boilerplate objections with virtually no factual underpinning, (5) waiting until PPS is finally forced to seek relief from this Court to raise certain objections and seek a protective order, and (6) ongoing refusal to produce even a part of certain categories of documents which are clearly discoverable, PPS is entitled to an award of fees and costs pursuant to Rule 37(a)(5)(A) and DUCivR 37-1(c).

4836-0062-8755.1

## CONCLUSION

For all of the foregoing reasons, PPS respectfully requests the Court grant its Motion to Compel.

Dated: May 13th, 2013              Respectfully submitted,

                                               KIRTON │ McCONKIE

                                               By: /s/James T. Burton
                                               Michael F. Krieger
                                               James T. Burton
                                               Joshua S. Rupp

                                               Attorneys for Plaintiff PPS Data, LLC

4836-0062-8755.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of May, 2013, a copy of the foregoing was filed electronically through the Court's CM/ECF system, which causes service upon all counsel registered thereon.

/s/ James T. Burton